UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
MATTHEW COSTELLO,

                                         Plaintiff,

                                                                    **OPINION AND ORDER**

                    – against –
                                                                      No. 12-CV-7216 (CS)

PHILIP MILANO and LUIS SANCHEZ, in their individual
capacities,

                                         Defendants.
-------------------------------------------------------------------------x

<u>Appearances:</u>

Michael Howard Joseph
Law Office of Michael H. Joseph, PLLC
White Plains, New York
*Counsel for Plaintiff*

Steven Leon Banks
New York State Office of the Attorney General
New York, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

        Before the Court is Defendants' Motion for Summary Judgment.  (Doc. 19.)  For the

following reasons, Defendants' Motion is granted.

## I.      BACKGROUND

        In October 2009, Plaintiff was enrolled as an undergraduate student at the State

University of New York campus in Purchase, New York ("SUNY Purchase").  (P's 56.1 ¶ 1.)[1]

Also in October 2009, Defendants Philip Milano and Luis Sanchez were employed by SUNY as

police officers and assigned to the SUNY Purchase campus.  (*Id.* ¶¶ 2-3.)

---

[1] "P's 56.1" refers to Plaintiff's Statement of Material Facts Pursuant to Local Civil Rule 56.1.  (Doc. 27.)

Plaintiff claims that shortly after midnight on Saturday, October 10, 2009, he and a few other SUNY Purchase students stopped at his Toyota Camry to pick up Plaintiff's iPod while walking from the SUNY Purchase student center to Plaintiff's dormitory.  (Banks Decl. Ex. D ("P's Dep."), at 11-12.)[2]  The Camry was parked in the SUNY Purchase Phase II parking lot, which was directly behind Plaintiff's dormitory.  (*Id.* at 14.)  When they arrived at Plaintiff's car, Plaintiff and the other students entered it to get out of the rain.  (*Id.* at 12-13.)[3]  Plaintiff claims that he and the other students sat in the car for about 20 seconds before Officer Milano, who was patrolling the SUNY Purchase campus with Officer Sanchez, (Milano Decl. ¶ 4),[4] tapped on the front passenger-side window, (P's Dep. 13, 20).

Officer Milano testified that he approached the Camry out of concern for the welfare of the individuals in the car, because he knew that SUNY Purchase students often held parties on Friday nights and that they and their guests sometimes fell asleep while intoxicated inside a vehicle.  (Joseph Decl. Ex. 3 ("Milano Dep."), at 16-17.)[5]  While Officer Milano could not see what was happening in the Camry because it was dark and the car's windows were foggy, (P's 56.1 ¶¶ 6-7), he could see that there were five individuals in the Camry, (Milano Dep. at 18).  Moreover, he testified that despite the Camry's foggy windows, he was able to see that the key was in the ignition before he knocked on the front passenger-side window.  (*Id.* at 20.)  Plaintiff,

---

[2] "Banks Decl." refers to Declaration of Assistant Attorney General Steven L. Banks in Support of Defendants' Motion for Summary Judgment.  (Doc. 24.)

[3] Plaintiff does not explain why he and his friends all went to the car to retrieve the iPod, or why they did not thereafter simply go to the adjacent dormitory to get out of the rain, in which they had walked from the student center.  (*See* P's Dep. 12-14.)  This issue does not, however, affect my resolution of the instant Motion.

[4] "Milano Decl." refers to Declaration of Philip Milano in Support of Defendants' Motion for Summary Judgment. (Doc. 23.)

[5] "Joseph Decl." refers to Declaration of Counsel in Opposition to Defendants' Summary Judgment Motion.  (Doc. 28.)

however, testified that he put the key in the ignition after Officer Milano tapped on the window because Plaintiff's Camry has power windows which cannot function while the car is off.  (*See* P's Dep. 20-21.)

Officer Milano, who received basic drug detection training at the police academy, (Milano Dep. 8), testified that after the front passenger-side window was lowered, he smelled marijuana and alcohol, (*id.* at 22).  Officer Sanchez, who stood at the rear of the Camry, (P's 56.1 ¶ 26), testified that he also smelled marijuana coming from the vehicle and that he heard Officer Milano say that he smelled marijuana, (Joseph Decl. Ex. 2 ("Sanchez Dep."), at 17-18).  Officer Milano stated that, in addition to smelling marijuana, he saw a "rolled up cigar, which appeared to be a marijuana cigar," on the center console after the front passenger-side window was lowered.  (Milano Dep. 22-23.)  Plaintiff disputes that any marijuana was in plain view, (P's Dep. 17-18), or that either Defendant could have smelled marijuana because the car did not smell of marijuana and nobody had smoked marijuana in the car, (*id.* at 17).

After the front passenger-side window was lowered, Officer Milano told Plaintiff to remove the key from the ignition and place it on the dashboard.  (Milano Decl. ¶ 9.)  Once Plaintiff removed the key from the ignition, Officer Milano directed him to exit the car.  (P's 56.1 ¶ 16.)  When Plaintiff exited the car, Officer Milano observed that Plaintiff had bloodshot, glassy eyes and his breath smelled like alcohol.  (*Id.* ¶ 18.)  Officer Milano also observed that Plaintiff appeared to be lethargic and had difficulty following directions.  (*Id.* ¶ 19.)  Because of these observations, Officer Milano believed Plaintiff was intoxicated.  (Milano Dep. 27-28.)  Officer Milano did not, however, administer a field sobriety test or breathalyzer while in the Phase II parking lot.  (*See id.*)  Plaintiff admits that he had consumed four cans of beer between approximately 10:00 PM and 11:30 PM, (P's Dep. 15-16), and that this amount of alcohol was

sufficient to intoxicate him, (P's Mem. 5).[6]  Plaintiff did not, however, feel intoxicated.  (P's Dep. 16.)

The parties dispute several facets of the subsequent events.  Plaintiff testified that he exited the Camry and was then frisked, handcuffed and placed in the back of Defendants' patrol car.  (*Id.* at 22.)  Officer Milano claims that after Plaintiff exited the car, he was frisked but not immediately handcuffed.  (Milano Dep. 26-27.)  Rather, Plaintiff stood towards the rear of the Camry with Officer Sanchez as Officer Milano directed the other occupants to exit the car and frisked them.  (*See* Milano Decl. ¶ 11.)  Officer Milano did not find contraband on Plaintiff or any of the other individuals in the Camry.  (*Id.*)  After all the students were frisked, Plaintiff, the other four occupants of the Camry and Officer Sanchez stood at the rear of the car while Officer Milano searched it.  (*Id.* ¶¶ 11-12; Milano Dep. 31.)  Officer Milano claims that although nobody was free to leave, nobody was handcuffed while he searched the car.  (Milano Dep. 27, 31.)

During his search of the Camry, Officer Milano inspected the cigar he claims was on the center console and found that it contained a green leafy substance that appeared to be marijuana.  (Milano Aff. ¶ 12.)  Underneath the driver's seat, Officer Milano found a small plastic glassine envelope, which also appeared to contain marijuana, and a glass pipe, which appeared to be stained with marijuana residue.  (P's 56.1 ¶ 24.)  Officer Milano found a second glass pipe, which appeared to be stained with marijuana residue, under the front passenger seat.  (*Id.*)  Officer Milano claims he also found three Zig-Zag rolling paper containers and a New York learner's permit and driver's license containing Plaintiff's name and an altered date of birth.  (Milano Aff. ¶ 12.)  Plaintiff admits that Officer Milano found the cigar and that it contained

---

[6] "P's Mem." refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment.  (Doc. 26.)

marijuana, but claims it was not on the center console. (P's 56.1 ¶ 24.) Plaintiff also admits that the glassine envelope contained marijuana and that Officer Milano found all of the drug paraphernalia except the rolling paper containers. (*Id*. ¶¶ 24-25.) Plaintiff disputes that Officer Milano found a forged driver's license or learner's permit. (*Id*. ¶ 25.)

Officer Milano testified that after he completed his search of the Camry, he asked if the marijuana and drug paraphernalia belonged to any of the car's occupants, and that Plaintiff responded that the marijuana and drug paraphernalia were his. (Milano Dep. 26-27.) Plaintiff, however, claims he did not say the marijuana and drug paraphernalia belonged to him, (P's Dep. 19-20), and Officer Sanchez testified that he did not hear Plaintiff assert ownership of the marijuana, (Sanchez Dep. 23-24). Officer Milano testified that he handcuffed Plaintiff only after Plaintiff asserted ownership of the marijuana. (Milano Dep. 33.)

It is undisputed that the Defendants, at some point, handcuffed Plaintiff, placed him in the back of the patrol car and drove him to the campus police station, and allowed the four other occupants of the Camry to leave. (P's 56.1 ¶ 29; Milano Dep. 33.) Defendants assert that at the time Plaintiff was taken to the campus police station, he was under arrest for unlawful possession of marijuana and detained on suspicion of driving while intoxicated. (P's 56.1 ¶ 30.) After arriving at the campus police station, Officer Milano escorted Plaintiff inside and Officer Sanchez left to resume his patrol. (*Id*. ¶ 34.) Officer Milano then administered three standardized field sobriety tests, all of which Plaintiff failed. (*Id*. ¶¶ 36-37.) Plaintiff also submitted to a breathalyzer test, which showed that he had a blood alcohol content ("BAC") of .08 percent. (*Id*. ¶ 38.)

Based on the results of the field sobriety tests and the breathalyzer, Officer Milano signed a Simplified Information/Complaint charging Plaintiff with driving while intoxicated in violation

of New York Vehicle & Traffic Law ("VTL") §§ 1192(2) and (3).  (Joseph Decl. Ex. 7.)  Officer

Milano also filed a Violation Information charging Plaintiff with unlawful possession of

marijuana in violation of New York Penal Law § 221.05.  (*Id.* Ex. 9.).  Plaintiff posted bail and

was released from custody at approximately 3:00 AM.  (P's 56.1 ¶¶ 41-43.)

On November 12, 2009, Officer Milano signed a Felony Complaint that charged Plaintiff

with felony violations of VTL §§ 1192(2) and (3).  (Joseph Decl. Ex. 8.)  These charges were

later reduced to misdemeanors.  (P's 56.1 ¶ 45.)  On May 18, 2010, the Westchester County

District Attorney's Office (the "DA's Office") withdrew all charges against Plaintiff.  (*Id.* ¶ 46;

Banks Decl. Exs. E, F.)  Officer Sanchez did not participate in any criminal proceedings, (P's

56.1 ¶ 47; Sanchez Decl. ¶ 18),[7] and there is no evidence that Officer Sanchez communicated

with the DA's Office regarding Plaintiff's charges or assisted in Plaintiff's prosecution in any

way.

Plaintiff commenced this action on September 25, 2012, bringing Section 1983 claims

based on false arrest and malicious prosecution.  (Complaint ("Compl."), (Doc. 1), ¶¶ 1-34.)

Defendants now seek summary judgment on all claims.  (Doc. 19.)

## II.    DISCUSSION

### A.  Legal Standards

#### 1.    Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that

---

[7] "Sanchez Decl." refers to Declaration of Luis Sanchez in Support of Defendants' Motion for Summary Judgment. (Doc. 22.)

a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, and, if satisfied, the burden then shifts to the non-movant to present evidence sufficient to satisfy every element of the claim. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). Where, as here, affidavits are used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542

F.3d 290, 310 (2d Cir. 2008).  In the event a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2), (3).

## 2.    Section 1983

To state a claim under Section 1983, Plaintiff must allege that state officials, acting under color of state law, deprived him of a right guaranteed by the Constitution or federal law.  42 U.S.C. § 1983; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).  Here, Plaintiff's Section 1983 claims are predicated on allegations that he was falsely arrested and maliciously prosecuted.

### a.   False Arrest

Plaintiff's false arrest claim must be analyzed under the law of the state in which the arrest occurred – here, New York.  *See Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004). To establish a false arrest claim under New York law, "a plaintiff must show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (internal quotation marks omitted).  In this case, the parties dispute whether there was a justification or privilege for Plaintiff's arrest.  (*See* Ds' Mem. 8.)[8]

---

[8] "Ds' Mem." refers to Memorandum of Law in Support of Defendants' Motion for Summary Judgment."  (Doc. 20.)  Defendants also dispute whether Officer Sanchez had sufficient personal involvement to be held liable for the allegedly false arrest.  As explained below, Plaintiff's false arrest claim will be dismissed because there was arguable probable cause for his arrest.  Had there been no arguable probable cause, however, Officer Sanchez's participation as a back-up officer may have been sufficient to hold him liable.  *See Travis v. Vill. of Dobbs Ferry*,

An arrest is justified or privileged if it is based on probable cause. *LaFontaine v. City of N.Y.*, No. 08-CV-1555, 2009 WL 3335362, at *5 (S.D.N.Y. Oct. 14, 2009); *see Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). Probable cause exists when an officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jocks*, 316 F.3d at 135 (internal quotation marks omitted); *accord Dunaway v. New York*, 442 U.S. 200, 208 n.9 (1979). The focus is not on the arresting officer's certitude, but rather on the likelihood of criminal activity. *See Illinois v. Gates*, 462 U.S. 213, 231-32 (1983); *LaFontaine*, 2009 WL 3335362, at *5. "[P]robable cause is evaluated under an objective standard," under which "courts look to the information available to the law enforcement officer at the time of the arrest and consider the totality of the circumstances." *Michaels v. City of N.Y.*, No. 10-CV-2666, 2011 WL 570125, at *5 (S.D.N.Y. Feb. 16, 2011) (internal quotation marks omitted); *accord Gates*, 462 U.S. at 230-31. Once a law enforcement officer "has a reasonable basis for believing there is probable cause" to arrest a suspect, "he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest," *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997), and "the validity of an arrest is not contingent upon an ultimate finding of guilt or innocence," *Bulanov v. Town of Lumberland Constable Meehan*, No. 00-CV-4292, 2002 WL 181365, at *4 (S.D.N.Y. Feb. 6, 2002).

---

355 F. Supp. 2d 740, 752-53 (S.D.N.Y. 2005) (false arrest claim can be asserted against an officer "for his role as a 'back-up officer,' or for failing to stop another officer's violation of a person's Fourth Amendment rights" if he was in a position to do so).

Moreover, because probable cause is evaluated under an objective standard, it need not be "predicated upon the offense invoked by the arresting officer, or even upon an offense 'closely related' to the offense invoked by the arresting officer," and "the 'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'" *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). The focus is simply on "the validity of the *arrest*, and not on the validity of each charge." *Id.* at 154 (emphasis in original). Finally, an arrest is justified if one officer participating in the arrest or investigation knew of facts sufficient to provide probable cause, because such knowledge is imputed to each officer who participated in the arrest. *Carpenter v. City of N.Y.*, No. 11-CV-8414, 2013 WL 6196968, at *5-*6 (S.D.N.Y. Nov. 27, 2013) (citing *Savino v. City of N.Y.*, 331 F.3d 63, 74 (2d Cir. 2003)).

### b.   Malicious Prosecution

As with Plaintiff's false arrest claim, Plaintiff's malicious prosecution claim must be analyzed under New York law. *See Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010). To establish a malicious prosecution claim under New York law, "a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* (internal quotation marks omitted). The parties dispute the first, third and fourth elements of Plaintiff's malicious prosecution claim. (*See* Ds' Mem. 14.)[9]

---

[9] I will, however, discuss only the first and third elements, because the malice inquiry is moot given my holdings regarding initiation and probable cause. *See infra* n.13.

"To initiate a prosecution, a defendant must do more than report the crime or give testimony." *Id.* at 163 (internal quotation marks and alterations omitted).  Rather, "he must play[] an active role in the prosecution," which includes "having the plaintiff arraigned . . . filling out complaining and corroborating affidavits, and . . . signing felony complaints." *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006) (internal quotation marks omitted).  A police officer can also initiate a prosecution by creating material, false information and forwarding that information to a prosecutor or by withholding material information from a prosecutor.  *Id.*; *see Llerando-Phipps v. City of N.Y.*, 390 F. Supp. 2d 372, 383 (S.D.N.Y. 2005) (while "there is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding, an arresting officer may be held liable for malicious prosecution [if he] creates [material] false information . . . and forwards that information to prosecutors") (internal quotation marks omitted); *Webster v. City of N.Y.*, 333 F. Supp. 2d 184, 198-99 (S.D.N.Y. 2004) (police officers could be held liable for malicious prosecution if they provided false information to prosecutors).

As with false arrest claims, "the existence of probable cause is a complete defense to a claim of malicious prosecution in New York," *Savino*, 331 F.3d at 72, but unlike false arrest claims, the defendant must have possessed probable cause as to each offense charged, *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991).  "In the context of a malicious prosecution claim, probable cause under New York law is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994) (internal quotation marks omitted).  Therefore, "the existence, or lack, of probable cause is measured as of the time the judicial proceeding is commenced (e.g., the time of the arraignment), not the time of

11

the . . . arrest." *Morgan v. Nassau Cnty.*, No. 03-CV-5109, 2009 WL 2882823, at *10 (E.D.N.Y.

Sept. 2, 2009) (internal quotation marks omitted).  "If probable cause existed at the time of

arrest, it continues to exist at the time of prosecution unless undermined 'by the discovery of

some intervening fact.'" *Johnson v. Constantellis*, 221 F. App'x 48, 50 (2d Cir. 2007) (summary

order) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003)).

### 3.        Qualified Immunity

Defendants argue that even if they did not have probable cause either to arrest or to

charge Plaintiff and Plaintiff has established the other elements of his claim, they are nonetheless

immune from suit under the doctrine of qualified immunity.  Government officials exercising

discretionary functions are entitled to qualified immunity shielding them from damages in a

Section 1983 suit "insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982), or insofar as it was objectively reasonable for them to believe that

their conduct did not violate such rights, *see Anderson v. Creighton*, 483 U.S. 635, 638-39

(1987).  A government official sued in his individual capacity is entitled to qualified immunity

> (1) if the conduct attributed to him was not prohibited by federal law; or (2) where
> that conduct was so prohibited, if the plaintiff's right not to be subjected to such
> conduct by the defendant was not clearly established at the time it occurred; or (3)
> if the defendant's action was objectively legally reasonable . . . in light of the
> legal rules that were clearly established at the time it was taken.

*Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 210 (2d Cir. 2002) (internal quotation marks and

alterations omitted); *see Creighton,* 483 U.S. at 639 ("[W]hether an official protected by

qualified immunity may be held personally liable for an allegedly unlawful official action

generally turns on the objective legal reasonableness of the action . . . assessed in light of the

legal rules that were clearly established at the time it was taken.") (internal quotation marks

omitted).  Thus, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

As qualified immunity entitles a defendant to complete immunity from suit, rather than simply a defense to liability, the Court, where possible, should rule on the question of qualified immunity at the earliest possible stage of the litigation.  *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Tierney v. Davidson*, 133 F.3d 189, 194-95 (2d Cir. 1998).  Summary judgment should be granted where "the defendant shows that no reasonable jury, viewing the evidence in the light most favorable to the [p]laintiff, could conclude that the defendant's actions were objectively unreasonable in light of clearly established law."  *Husain v. Springer,* 494 F.3d 108, 131 (2d Cir. 2007) (internal quotation marks omitted).

When accused of making a false arrest, an officer is entitled to qualified immunity if there was "arguable probable cause" at the time of arrest.  *Jenkins v. City of N.Y.*, 478 F.3d 76, 87 (2d Cir. 2007).  Arguable probable cause to arrest "exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010) (internal quotation marks omitted).  Similarly, an officer is entitled to qualified immunity from suit on a claim of malicious prosecution if there was "arguable probable cause" to charge the plaintiff.  *See Jean v. Montina*, 412 F. App'x 352, 354 (2d Cir. 2011) (summary order).  "Arguable probable cause to charge exists where, accounting for any new information learned subsequent to an arrest, 'it was not manifestly unreasonable for [the defendant officer] to charge [the plaintiff]' with the crime in question."  *Id.* (alterations in original) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 572 (2d Cir. 1996)).

13

### B.  Plaintiff's Claims Against the Officers

#### 1.      False Arrest Claim Against Both Defendants

As a threshold issue to Plaintiff's false arrest claim, the parties dispute when Plaintiff was placed in handcuffs – *i.e.* when Plaintiff was arrested for Fourth Amendment purposes – and, therefore, when Defendants must have possessed probable cause for his arrest.  *See Posr*, 944 F.2d at 99 ("If to a reasonable observer, [defendants,] upon physical contact with [plaintiff], acted with an unreasonable level of intrusion given the totality of the circumstances in restraining [plaintiff's] freedom of movement to the point where [plaintiff] did not feel free to leave, then an arrest could be found.").  Plaintiff testified that Officer Milano placed him in handcuffs shortly after he exited the Camry, but before Officer Milano searched his car and discovered marijuana.  Officer Milano testified that Plaintiff was handcuffed only after Officer Milano searched the car and discovered marijuana.  Because, for the purposes of this Motion, I must resolve this dispute in Plaintiff's favor, I will credit Plaintiff's assertion that he was arrested shortly after he exited the Camry, before Officer Milano discovered marijuana in the car.  *Cf. Travis*, 355 F. Supp. 2d at 747 ("A reasonable person who has been stopped on the street, removed from her car, frisked, handcuffed in the absence of any need to prevent a struggle, placed in the locked back seat of a police car, and driven to a police station could not possibly think that she was free to go.").  Even accepting Plaintiff's version of events, however, Defendants possessed arguable probable cause to arrest him for driving while impaired.

VTL § 1192 provides that "[n]o person shall operate a motor vehicle while the person's ability to operate such motor vehicle is impaired by the consumption of alcohol."  N.Y. Veh. & Traf. § 1192(1).  "The term 'operate' as used in the [VTL] is broader than the term 'drive' and extends to a situation where a motorist begins to engage the motor for the purpose of putting the

vehicle into motion." *People v. Westcott*, 923 N.Y.S.2d 763, 765 (App. Div. 2011) (internal

quotation marks omitted); *see also People v. Prescott*, 95 N.Y.2d 655, 662 (2001) (an individual

"operates a motor vehicle within the meaning of the statute when, in the vehicle, he intentionally

does any act or makes use of any mechanical or electrical agency which alone or in sequence

will set in motion the motive power of the vehicle") (internal quotation marks and alterations

omitted).  And, obviously, having actually driven the vehicle would constitute operating it

whether the evidence of operation is direct or circumstantial.  *See People v. Cosimano*, 975

N.Y.S.2d 368, 368 (App. Term 2013) (stating "[t]he operation element of [§ 1192] may be

proved circumstantially" and finding probable cause of operation where "there was no rational

explanation for defendant's presence and condition in the parking lot other than that he was not

at the starting point of his journey").  An individual is "impaired" under VTL § 1192(1) if, by

consuming alcohol, he "has actually impaired, to any extent, the physical and mental abilities

which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver."

*People v. Gingras*, 871 N.Y.S.2d 812, 813 (App. Term 2008) (internal quotation marks omitted);

*see Hoyos v. City of N.Y.*, No. 10-CV-4033, 2013 WL 7811754, at *5 (E.D.N.Y. Dec. 11, 2013)

(impairment requires a "far less rigorous" burden of proof than intoxication).

Here, there was arguable probable cause to arrest Plaintiff for violating VTL § 1192(1),

based on recent operation of the vehicle while impaired.  First, there was probable cause that

Plaintiff was impaired, as that term is used in VTL § 1192(1), based on Officer Milano's

observation that Plaintiff's eyes were bloodshot and glassy, that Plaintiff's breath smelled of

alcohol and that Plaintiff had difficulty following simple directions.  *See People v. McCarthy*,

523 N.Y.S.2d 291, 291 (App. Div. 1987) (bloodshot eyes, slurred speech and strong odor of

alcohol sufficient for probable cause of impairment); *People v. Blajeski*, 509 N.Y.S.2d 648, 649

15

(App. Div. 1986) (same); *see also People v. Kowalski*, 738 N.Y.S.2d 427, 429 (App. Div. 2002) ("[P]robable cause [for intoxication] need not always be premised upon the performance of field sobriety tests.").  Second, crediting Plaintiff's assertion that the key was not in the ignition before Officer Milano tapped on the window,[10] a reasonable officer could infer that Plaintiff had recently driven the Camry because Plaintiff and four other individuals were sitting in the car in a parking lot and Plaintiff was in the driver's seat with the keys.[11]  While an equally reasonable inference from these facts might be that Plaintiff was preparing to drive the vehicle, in which case he would not be liable for any VTL § 1192 offense, *cf. Prescott*, 95 N.Y.2d at 662 (no attempt liability under VTL § 1192), this does not render the inference of recent operation unreasonable, *see Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013) ("[P]robable cause does not demand that an officer's good-faith belief that a suspect has committed or is committing a crime be correct or more likely true than false.") (internal quotation marks omitted); *Ricciuti*, 124 F.3d at 128 (once an officer "has a reasonable basis for believing there is probable cause" to arrest a suspect, "he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest"); *Whitton v. Williams*, 90 F.

---

[10] The fact that Plaintiff started the car's engine, or at least the battery, by turning the key in the ignition in response to Officer Milano tapping on the window – which I accept for purposes of this Motion – does not constitute "operation" in this case, because Plaintiff clearly did not start it "for the purpose of putting the vehicle in motion." *Westcott*, 923 N.Y.S.2d at 765.  Had Officer Milano not testified that he saw the keys in the ignition before he tapped on the window, the presence of the keys in the ignition once the window was opened might have supported arguable probable cause, because the officer might reasonably not have realized they were placed there just to open the window.  But given that Officer Milano claims to have been able to see the ignition despite the foggy windows, and because I must credit Plaintiff when the versions conflict, Officer Milano is not entitled to that inference.

[11] Any mistake of law on Defendants' part as to the requirements for "operation" under VTL § 1192 is irrelevant to the objective assessment of probable cause or arguable probable cause.  The Court finds arguable probable cause not because "operation" is not required (it plainly is) and not because the key was in the ignition (there is a fact dispute as to that), but because a reasonable objective officer could find probable cause to believe Plaintiff had recently driven the vehicle, even if other officers might disagree.

Supp. 2d 420, 429 (S.D.N.Y. 2000) ("It can be objectively reasonable for an officer to believe

that probable cause existed for the arrest, even in the absence of a finding that probable cause in

fact existed.") (internal quotation marks omitted). Moreover, due to the lack of visible alcohol

containers in the car, it was unlikely that Plaintiff had become impaired after he finished

operating the vehicle. *See People v. Spencer*, 736 N.Y.S.2d 428, 431 (App. Div. 2001)

("absence of alcoholic containers in or around the car" negated possibility defendant became

intoxicated after he finished operating the vehicle); *People v. Saplin*, 505 N.Y.S.2d 460, 461

(App. Div. 1986) (similar). And a reasonable officer could likewise infer that it was more likely

that Plaintiff had gotten drunk and just driven home than it was that Plaintiff had gotten drunk

and then just gotten behind the wheel to go out with his friends, given that the occupants had

been inside the car long enough for the windows to fog up. Similarly, it would be reasonable to

infer that a student dormitory parking lot was a foolish place in which to sit in a car and get

drunk, and it was therefore more likely that Plaintiff had gotten drunk elsewhere earlier.

Reasonable officers in Defendants' position thus could have reasonably inferred that there was

probable cause that Plaintiff had recently driven while impaired, or at least could disagree on the

matter. Defendants therefore possessed arguable probable cause to arrest Plaintiff for operating

his vehicle while impaired by alcohol, and Plaintiff's false arrest claim must be dismissed.[12]

---

[12] Given the presence of marijuana in the Camry and Officer Milano's drug detection training, I am doubtful that I would have to accept Plaintiff's assertion that the car did not smell of marijuana and therefore Defendants could not have smelled marijuana coming from the car. *See Rotbergs v. Guerrera*, No. 10-CV-1423, 2012 WL 1204729, at *5 (D. Conn. Apr. 11, 2012) (on defendant's summary judgment motion, crediting defendant's claim that he smelled marijuana despite contrary assertion by plaintiff due, in part, to presence of marijuana in vehicle); *United States v. Colon*, No. 10-CR-498, 2011 WL 569874, at *12 (S.D.N.Y. Feb. 8, 2011) (testimony that no marijuana had been smoked in car "is not necessarily inconsistent" with officer's assertion that he smelled marijuana emanating from car given presence of "a small quantity" of unburned marijuana in car). If I were to accept Officer Milano's assertion that he smelled marijuana, he might have had arguable probable cause to arrest the occupants of the car for unlawful possession of marijuana. *See People v. Robinson*, 959 N.Y.S.2d 188, 188 (App. Div. 2013) (smell of marijuana emanating from vehicle provides probable cause to arrest only individual in vehicle); *People v. Smith*, 887 N.Y.S.2d 562, 562 (App. Div. 2009) (smell of marijuana provides probable cause to search all occupants of vehicle). Nevertheless, because Defendants possessed arguable probable cause to arrest Plaintiff for driving while impaired,

### 2. Malicious Prosecution Claim Against Officer Sanchez

There is no evidence that Officer Sanchez initiated Plaintiff's prosecution for any of the crimes with which Plaintiff was charged by, *e.g.*, signing a charging instrument, discussing Plaintiff's prosecution with the DA's Office or involving himself in Plaintiff's prosecution in any other way.  (*See* Sanchez Decl. ¶ 18.)  Plaintiff's malicious prosecution claim against Officer Sanchez must, therefore, be dismissed.  *See Mitchell*, 434 F. Supp. 2d at 227-28; *see also Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted).

### 3. Malicious Prosecution Claim Against Officer Milano

#### a. Initiation

Officer Milano, on the other hand, initiated Plaintiff's prosecution by signing the charging instruments.  While the DA's decision to bring charges would otherwise have cut the causal chain between Officer Milano's actions and Plaintiff's prosecution, Plaintiff argues that Officer Milano submitted false allegations to the DA's Office.  (*See* P's Mem. 19-20.)  Although Plaintiff does not specify which of Officer Milano's statements were false or how they were material, *see* Fed. R. Civ. P. 56(c)(1)(A), Officer Milano's Incident Report, which was presumably forwarded to the DA's Office, asserts that Plaintiff claimed ownership of the marijuana, (*see* Milano Decl. Ex. A, at 3), which contradicts Plaintiff's account.  The Incident Report also states that "the keys of the vehicle were in the ignition," (*id.*), and Officer Milano checked the "keys in the ignition" box of his Supporting Deposition, (Joseph Decl. Ex. 10),

---

and this alone requires dismissal of his false arrest claims, *see Jaegly*, 439 F.3d at 153, I need not address whether there was probable cause to arrest Plaintiff for unlawful possession of marijuana before Officer Milano searched the car.

which could be interpreted as assertions that the keys were in the ignition before Officer Milano

knocked on the window, and would also contradict Plaintiff's version of events.  I need not

determine whether these statements were misleading or material to the DA's decision to

prosecute Plaintiff, however, given that, as explained below, other evidence provided probable

cause to prosecute Plaintiff for all of the crimes with which he was charged.

b.   Probable Cause/Arguable Probable Cause

i.   VTL §§ 1192(2) and (3)

Officer Milano charged Plaintiff with violating VTL §§ 1192(2) and (3).  VTL § 1192(2)

prohibits "operat[ing] a motor vehicle while [an individual] has .08 of one per centum or more

by weight of alcohol in the person's blood."  N.Y. Veh. & Traf. Law § 1192(2).  Similarly, VTL

§ 1192(3) prohibits "operat[ing] a motor vehicle while in an intoxicated condition."  *Id.*

§ 1192(3); *see People v. Hagmann*, 572 N.Y.S.2d 952, 953-54 (App. Div. 1991) (individual is

intoxicated under VTL § 1192(3) if he "consumed alcohol to the extent that he is incapable of

employing the physical and mental abilities which he is expected to possess in order to operate a

vehicle as a reasonable and prudent driver") (internal quotation marks omitted).

Officer Milano, as explained above, possessed arguable probable cause that Plaintiff had

operated his vehicle while impaired at the time of his arrest.  There was, therefore, arguable

probable cause as to the operation element at the time Officer Milano charged Plaintiff with

violating VTL §§ 1192(2) and (3).  *See Martinez v. Golding*, 499 F. Supp. 2d 561, 569 (S.D.N.Y.

2007) ("[I]n the absence of some indication that the authorities became aware of exculpatory

evidence between the time of the arrest and the subsequent prosecution that would undermine the

probable cause which supported the arrest, no claim for malicious prosecution may lie.")

(internal quotation marks omitted).  Moreover, before Officer Milano charged Plaintiff with

19

violating VTL §§ 1192(2) and (3), probable cause of impairment matured into probable cause

that Plaintiff was intoxicated, because a breathalyzer test revealed that Plaintiff's BAC was .08

percent and Plaintiff failed three field sobriety tests while at the campus police station.  *See*

*People v. Menegan*, 967 N.Y.S.2d 461, 464 (App. Div. 2013) (breathalyzer that reveals BAC of

.08 percent or greater "is sufficient to establish prima facie violation of [VTL] § 1192(2)");

*People v. Chijevich*, 959 N.Y.S.2d 91, 91 (App. Term 2012) (upholding convictions for violating

VTL §§ 1192(2) and (3) where breathalyzer revealed BAC greater than or equal to .08 percent

and there was evidence defendant was uncoordinated, slurred his speech, had watery and

bloodshot eyes, had odor of alcohol on breath and failed two of three coordination tests).  The

malicious prosecution claim based on the VTL § 1192 charges must, therefore, be dismissed.

## ii.   Penal Law § 221.05

In addition to the VTL § 1192 offenses, Officer Milano charged Plaintiff with unlawful

possession of marijuana in violation of Penal Law § 221.05.  "A person is guilty of unlawful

possession of marihuana when he knowingly and unlawfully possesses marihuana."  N.Y. Penal

Law § 221.05.  Plaintiff admits that Officer Milano recovered a marijuana cigar from some

location in the car.  Plaintiff disputes Officer Milano's assertion that he found a marijuana cigar

on the center console, but he bases that position solely on the fact that he never saw it when he

was in the vehicle, (*see* P's Dep. 17-18), which does not mean that it was not there when Officer

Milano seized it.  Indeed, while I must for present purposes discredit Officer Milano's statement

that he saw the marijuana cigar on the center console when the front passenger-side window was

first lowered, Officer Milano's assertion that he found the marijuana cigar on the center console

during his subsequent search is wholly consistent with Plaintiff's argument that the other

passengers left marijuana in the vehicle after Plaintiff exited the Camry.  Moreover, it is

undisputed that Officer Milano found marijuana in a glassine envelope and a used glass pipe under the driver's seat.  Although "[m]ere proximity [to contraband] is . . . insufficient to support a finding of constructive possession," *United States v. Rodriguez*, 392 F.3d 539, 548 (2d Cir. 2004), the location of the marijuana cigar in the center console and the glassine envelope of marijuana and glass pipe underneath the driver's seat permit the inference that Plaintiff was in possession of marijuana, and therefore provided probable cause to charge Plaintiff with violating Penal Law § 221.05, *see Elk v. Townson*, 839 F. Supp. 1047, 1051-52 (S.D.N.Y. 1993) (probable cause to arrest driver where marijuana found "in the front seat space . . . within his easy reach"); *see also Lozada v. City of N.Y.*, No. 12-CV-0038, 2013 WL 3934998, at *3 (E.D.N.Y. July 29, 2013) ("A defendant constructively possesses tangible property when he 'exercise[s] dominion or control over the property by a sufficient level of control over the area in which the contraband is found . . . .'") (quoting *People v. Manini*, 79 N.Y.2d 561, 573 (1992)).  At the very least, such facts provided arguable probable cause that Plaintiff possessed the marijuana.  Accordingly, the malicious prosecution claim based on this charge must be dismissed.[13]

**CONCLUSION**

        For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED and all claims are dismissed.  The Clerk of Court is respectfully directed to terminate Defendants' Motion, (Doc. 19), enter judgment for Defendants, and close the case.

**SO ORDERED.**

Dated: May 6, 2014
        White Plains, New York

_____
                                        CATHY SEIBEL, U.S.D.J.

---

[13] In light of this disposition, I need not decide whether Officer Milano's allegedly false or misleading statements to the DA's Office suffice to show malice.

21